John C. Rothermich, OSB #071685
E-Mail: jrothermich@gsblaw.com
Telephone: 503-228-3939
Fax: 503-226-0259
Garvey Schubert Barer
Eleventh Floor
121 S.W. Morrison Street
Portland, Oregon 97204-3141

    Attorneys for Plaintiff
    Vincent Padgett

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **VINCENT PADGETT,**<br><br>    Plaintiff,<br><br>v.<br><br>**ANTON KOWANDA; CHRIS SCHAEFER; SCOTT WILLIS; MICHELLE HUBBARD; JUREK KOLMAN; NANCY HOWTON; TROY BROWSER; DARYL BORELLO; RICHARD OGDEN; CARLA TUPOU; ROBIN WILKERSON;** and **GEORGE DEGNER, M.D.,**<br><br>    Defendants. | Case No. CV 08-0087-HU<br><br>**SECOND AMENDED COMPLAINT**<br>(Civil Rights Under 42 USC § 1983)<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Vincent Padgett, by and through his counsel, alleges as follows:

**NATURE OF THE ACTION**

1.

Plaintiff, at all relevant times an inmate of the Oregon Department of Corrections ("ODOC"), brings this civil rights action under 42 U.S.C. § 1983 to recover compensatory damages for violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff's claims are based on Defendants' role in precipitating and failing

**SECOND AMENDED COMPLAINT**
Page 1

to protect him from two assaults by fellow inmates in June and July of 2006, and their subsequent failure to diagnose and treat Plaintiff's subdural hematoma caused by the assaults.

## JURISDICTION AND VENUE

2.

This Court has jurisdiction by virtue of 28 U.S.C. § 1331. This action arises under the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

3.

The Court has personal jurisdiction over all Defendants because they were, at all relevant times, employees of ODOC, and the claims against them arise out of their actions in the State of Oregon.

4.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because Defendants reside in this district and the events giving rise to Plaintiff's claims occurred in this district.

## PARTIES

5.

Plaintiff is a citizen of the State of Oregon and currently a prisoner at the Snake River Correctional Institution ("SRCI") in Ontario, Oregon. Plaintiff was formerly a prisoner at the Oregon State Correctional Institute ("OSCI") and the Oregon State Penitentiary ("OSP").

6.

At all relevant times, all Defendants were employees of ODOC. Plaintiff brings this action against Defendants in their official and individual capacities. All acts of Defendants complained of within this Complaint were committed under color of law of the State of Oregon.

7.

At all relevant times, Defendant Anton Kowanda ("Defendant Kowanda") was employed by the Investigative Services Division of ODOC and was the investigator who made initial inquiries into the inmate video game smuggling incident at OSCI.

8.

At all relevant times, Defendant Chris Schaefer ("Defendant Schaefer") was employed by ODOC as a manager of Oregon Correctional Enterprises ("OCE") at OSCI. OCE is an entity that employs inmates incarcerated at OSCI.

9.

At all relevant times, Defendant Scott Willis ("Defendant Willis") was employed by ODOC as a manager of OCE at OSCI.

10.

At all relevant times, Defendant Michelle Hubbard ("Defendant Hubbard") was employed by ODOC as a Corrections Officer at OSCI.

11.

At all relevant times, Defendant Jurek Kolman ("Defendant Kolman") was employed by ODOC as a Supervisor of the Engineering Support Unit ("ESU") of OCE at OSCI.

12.

At all relevant times, Defendant Nancy Howton ("Defendant Howton") was employed by ODOC as the Superintendent at OSCI.

13.

At all relevant times, Defendant Troy Browser ("Defendant Browser") was employed by ODOC as the Institution Security Manager at OSCI.

14.

At all relevant times, Defendant Daryl Borello ("Defendant Borello") was employed by ODOC as the Chief Investigator in the Special Investigations Unit (SIU) of ODOC.

15.

At all relevant times, Defendant Richard Ogden ("Defendant Ogden") was employed by ODOC as a Captain at OSCI.

16.

At all relevant times, Defendant Carla Tupou ("Defendant Tupou") was employed by ODOC as the Assistant Superintendent of General Services at OSCI.

17.

At all relevant times, Defendant Robin Wilkerson ("Defendant Wilkerson") was employed by ODOC as the Security Threat Group ("STG") Manager at OSCI.

18.

At all relevant times, Defendant Dr. George Degner ("Defendant Degner") was employed by ODOC as an inmate physician at OSP, and was responsible for providing medical care to Plaintiff.

**PLRA INFORMATION**

19.

Plaintiff has not filed any previous federal court actions.

**CLAIMS FOR RELIEF**

FIRST CLAIM FOR RELIEF

(Failure to Protect under the Eighth and Fourteenth Amendments and 42 U.S.C. § 1983)

(Against Defendants Kowanda, Schaefer, Willis, Hubbard, Kolman, Howton, Browser, Borello, Ogden, Tupou, and Wilkerson)

20.

Plaintiff realleges and incorporates herein by reference paragraphs 1 through 19 above.

21.

On or about May 2, 2006, while Plaintiff was incarcerated at OSCI, inmate James Jones ("inmate Jones") and Plaintiff informed Defendant Schaefer that inmate Shawn McWeeney ("inmate McWeeney") had duped Defendant Schaefer into loading a smuggled video game, disguised as training software, onto the inmate computer network at OCE so that inmate McWeeny, inmate William Steiner ("inmate Steiner"), and others could access it.

22.

Defendant Schaefer contacted Investigate Services ("IS") and asked Defendant Kowanda to investigate. On or about May 3, 2006, between 7:30 and 8:00 a.m., inmate McWeeney and inmate Steiner suddenly panicked, saying a remote log-in had occurred during their unauthorized use of a computer and they were "caught." Later that day, both inmate Steiner and inmate McWeeney were directed by Defendant Willis to reconfigure their area so that their computer monitors could be seen by staff at all times.

23.

Also on or about May 3, 2006, inmate Steiner had a private conversation with Defendant Kowanda.

24.

On or about May 9, 2006, inmate Steiner approached Defendant Willis in an attempt to determine how much Defendant Willis knew about the investigation.

25.

On or about May 11, 2006, inmate Steiner was approached by Defendant Hubbard in the dining room at lunch and told to meet her on the unit ("Unit 11") to talk with her. Defendant Hubbard had previously caught inmate Steiner playing the video game at work when she came to see him.

26.

On or about May 17, 2006, inmate Steiner had a private conversation with Defendant Kowanda in his office. Upon exiting, inmate Steiner immediately approached inmate McWeeney and inmate Jones and said that Defendant Kowanda told him the following: (a) Defendant Schaefer knew of the video game being loaded on the network; (b) Defendant Schaefer had asked Defendant Kowanda to investigate inmates McWeeney and Steiner; (c) Defendant Schaefer had the disguised disk and Plaintiff was identified as the person who "ratted them out."

27.

Inmate Steiner asked inmate Jones how Plaintiff would react if confronted. Inmate Jones told inmate Steiner that Plaintiff would "flip out." Inmate Steiner then threatened Plaintiff with assault if he spoke with prison officials regarding the video game incident.

28.

On or about May 18, 2006, inmate Jones and Plaintiff told Defendant Schaefer they knew about the events alleged in paragraphs 21-27 above. Defendant Schaefer directed Plaintiff to summarize it in a memo and give it to him. Plaintiff did so and specifically requested that Defendant Kowanda be given no more information about Plaintiff or inmate Jones. Plaintiff further told Defendant Schaefer that Defendant Kowanda had previously caught these inmates and had done nothing and that Plaintiff and other inmates believed Defendant Kowanda gave them the game.

29.

Inmate Steiner subsequently asked Plaintiff, inmate Jones, and inmate Brent Leathers ("inmate Leathers") what happened to the video game disk. Inmate Jones told him that Defendant Kolman had the disk in his office and he did not know why Defendant Kolman had taken it (this was the disguised disk).

30.

On or about May 22, 2006, Defendant Kowanda searched through Defendant Kolman's desk and all of Defendant Kolman's CDs one by one.

31.

On or about May 22, 2006, inmate Steiner approached inmate Jones and asked him if he had revealed their May 17, 2006 conversation to Plaintiff. Inmate Steiner told inmate Jones that he had been "chewed out" for "passing information," given to him by staff, concerning Plaintiff.

32.

On or about May 23, 2006, inmate Jones and Plaintiff reported the events alleged in paragraphs 29-31 to Defendant Schaefer, and Plaintiff again typed up a memo describing the

SECOND AMENDED COMPLAINT
Page 6

same. Plaintiff wrote in the memo that he had been "targeted for assault" by inmate McWeeney and inmate Steiner. Plaintiff further wrote in the memo of inmate Steiner's and inmate McWeeney's involvement with gambling, drugs and cigarette smuggling in OCE. Plaintiff expressed his frustration at ODOC staff for revealing his conversation to inmates after having pled with them to not discuss it with Defendant Kowanda. Plaintiff attached a copy of his previous memo and gave it to Defendant Schaefer and Defendant Willis. Plaintiff also wrote a communication to Defendant Howton and Defendant Browser and attached copies of the memos.

33.

On or about May 24, 2006, Defendant Hubbard approached inmate Steiner in the dining room during the lunch period and had a 15-minute conversation with him apart from others. Inmate Steiner then left work and went back to Unit 11 to talk further with Defendant Hubbard.

34.

On or about May 25, 2006, Defendant Hubbard had another 15-minute conversation, in the dining room, with inmate Steiner and with Jason Campbell ("inmate Campbell"), who is a gang leader with European Kindred ("EK"). Inmate Steiner again left work to return to Unit 11 to talk further.

35.

On or about May 30, 2006, inmate Mark New ("inmate New") told inmate Peter Moxley that Defendant Schaefer and Plaintiff would not be around much longer.

36.

On or about June 1, 2006, Defendant Borello and Defendant Ogden told Plaintiff that the best thing to do for his safety was for them to not question any of the inmates about the video game disk, but let it blow over. They explained that the game was gone and nothing good could come of them confronting ESU workers about it.

37.

Defendant Borello told Plaintiff that an investigation into the tobacco issue was on-going and they were very interested in that. Plaintiff told Defendant Borello that he would tell Defendant Ogden if he heard more about the tobacco issue.

38.

On or about June 8, 2006, Defendant Willis and Defendant Tupou spoke with inmate Steiner. They told him that Plaintiff was not the "rat." They told inmate Steiner they had information he was planning an attack on Plaintiff and that if anything happened to Plaintiff or if they heard any more about the video game disk, inmate Steiner would be sent to another facility.

39.

On or about June 8, 2006, inmate Steiner told inmate Jones the substance of his conversation with Defendant Tupou and Defendant Willis. He said Plaintiff's assault had been arranged and the prison gang EK was going to assault Plaintiff if inmate Steiner was transferred to another facility. Inmate Steiner told inmate Jones to let Plaintiff know there would be no safe institution for Plaintiff.

40.

On or about June 9, 2006, inmate Steiner threatened Plaintiff with an assault and told him that prison staff had informed him that Plaintiff was the rat.

41.

Inmate Jones and Plaintiff immediately informed Defendant Schaefer about inmate Steiner's threats. Plaintiff asked Defendant Schaefer to contact Defendant Willis, Defendant Tupou, and Defendant Howton immediately. Plaintiff wrote a long memo detailing inmate Steiner's threats and supplied it to Defendants Schaefer, Willis, Tupou, and Howton. Shortly thereafter, inmate Steiner was found to be in possession of tobacco, which is considered contraband. Defendant Willis told him he had to leave and would likely lose his job (meaning he would have no more work hold and be shipped out because OSCI is a release facility and he was

doing a long sentence). Plaintiff told prison staff of inmate Steiner's plans to have Plaintiff assaulted.

42.

On or about June 11, 2006, while in the recreation yard (at approximately 1:10 p.m.), Plaintiff was assaulted by an unknown inmate.

43.

On or about June 11, 2006, inmate Steiner told inmate Jones to let Plaintiff know that "it could happen again." Inmate Jones relayed this information and the fact that inmate Steiner took credit for Plaintiff's June 11 assault, to Defendant Schaefer.

44.

On or about June 11, 2006, Plaintiff informed Defendant Howton, via written communication, of the conversation with inmate Steiner.

45.

On or about June 12, 2006, Plaintiff was threatened in the dining room at breakfast by an EK gang member. Upon arrival at work, inmate Michael Meehan ("inmate Meehan") threatened to harm Plaintiff in front of numerous other inmates, stating that inmate Steiner was his friend and Plaintiff was a rat. Inmate Meehan further stated that he would assault Plaintiff in Plaintiff's cell. Defendant Kolman observed inmate Meehan's threat. Plaintiff asked Defendant Kolman to call or e-mail Defendant Ogden and Defendant Tupou, but Defendant Kolman said there was nothing that he could do. Plaintiff then asked Defendant Schaefer to forward a memo Plaintiff wrote about inmate Meehan's threat to Defendants Ogden and Tupou, and Plaintiff took the memo to Defendant Willis.

46.

On or about June 13, 2006, inmate Steiner was provided a job as a back dock worker and given a "job hold" so he would not be transferred. Over the next 3 weeks, inmate Steiner's

disciplinary hearing was repeatedly delayed and he spoke with Defendant Wilkerson, many times, convincing her to keep him at OSCI.

47.

Throughout June 2006, Plaintiff continued to receive threats from inmate Steiner's friends and inmate Campbell's gang.

48.

On or about June 30, 2006, Defendant Kowanda told several inmates that if he had to work with Defendant Schaefer, Defendant Schaefer would be dead, and he [Defendant Kowanda] would "be in here with you guys." Defendant Kowanda again had inappropriate conversations with inmates while covering the OCE shop on July 2, 2006.

49.

Plaintiff reported all of the above stated instances repeatedly to Defendant Schaefer.

50.

On or about July 5, 2006, inmate Steiner was found guilty of possessing contraband. That night, Plaintiff was assaulted and beaten into unconsciousness in the dining room by a fellow inmate. The assailant was an EK gang member. Plaintiff was sent to the hospital and received stitches to his face.

51.

Defendants Kowanda, Schaefer, Willis, Hubbard, Kolman, Howton, Browser, Borello, Ogden, Tupou and Wilkerson, collectively, created the imminent and excessive risk that Plaintiff would be assaulted by other inmates, were aware of that risk, and deliberately disregarded that risk.

52.

As a direct and proximate result of Defendants' conduct, Plaintiff was, in fact, assaulted by other inmates as described above.

53.

Plaintiff's assaults resulted in a severe head injury that caused a subdural hematoma. The subdural hematoma went undiagnosed and untreated by ODOC medical staff for over nine months until Plaintiff underwent emergency brain surgery in May 2007. As a result of the untreated subdural hematoma, Plaintiff suffered from chronic severe headaches, and continues to suffer from dizziness, vision problems, post-traumatic stress disorder, emotional disturbance, severe sleep disturbance and ongoing cognitive impairment.

## SECOND CLAIM FOR RELIEF

(Failure to Provide Adequate Medical Care under the Eighth and Fourteenth Amendments and 42 USC § 1983)

(Against Defendant Degner)

54.

Plaintiff realleges and incorporates herein by reference paragraphs 1 through 53 above.

55.

On or about July 25, 2006, Plaintiff was transferred to OSP from OSCI.

56.

Shortly after his assault in July of 2006, Plaintiff suffered headaches that were intermittent but extreme in intensity and pain. In September of 2006, the headaches worsened, and became nearly continuous.

57.

Plaintiff discussed these massive headaches with his mental health case manager, Christine Andretti, and psychologist D. Duncan. Andretti and Duncan stated to Plaintiff that it was highly unlikely that his headaches were stress related because Plaintiff had the headaches immediately upon waking from sleep, a time when stress levels are lowest.

58.

In October of 2006, Plaintiff was admitted to the Special Management Unit (SMU) at OSP where inmates requiring mental and emotional assistance are placed. Plaintiff informed staff about his severe and continuous headaches.

59.

Over two weeks later, Plaintiff was finally escorted to see Defendant Degner. Defendant Degner told Plaintiff that his headaches were stress related. Defendant Degner asked no mental health questions, and he prescribed ketoprofen and Tylenol.

60.

The headaches continued, and the ketoprofen and Tylenol did not help at all. Plaintiff signed up almost every week to see a doctor over the headache pain and the failure of the prescribed medicine to curb it. Defendant Degner repeatedly refused to see Plaintiff, telling the SMU nurses that he had already made his decision and was not going to change his mind or Plaintiff's medications.

61.

From in or about November 2006 through May 2007, Plaintiff saw Defendant Degner for other medical problems and would bring up the headache problem each time. Defendant Degner once told Plaintiff to try self-hypnosis to cure his headaches.

62.

Plaintiff continually complained of the headaches to the SMU treatment team, which consisted of the psychological nurse and the mental health case managers.

63.

Between November 2006 and February 2007, Plaintiff's mental health deteriorated severely. He attempted suicide six times during that period, and Defendant Degner was aware of each attempt.

64.

On or about May 15, 2007, Dr. Michael Duran ordered a CAT scan for Plaintiff. That order was overruled by Defendant Degner.

65.

In or about May 2007, Plaintiff's headaches became so intense that Plaintiff began to vomit frequently. Plaintiff could not stand or sit without vomiting. On or about May 21, 2007, Plaintiff suffered from ruptured internal blood vessels from the vomiting and began vomiting blood.

66.

On or about May 22, 2007, Plaintiff visited Defendant Degner about the vomiting. Defendant Degner visited Plaintiff in his cell, with nursing and security staff present, because Plaintiff could not walk. During this visit Plaintiff vomited approximately twelve times. Defendant Degner stated that the vomiting was a result of Plaintiff abusing his medications, however Plaintiff had stopped taking medication about one week earlier. Defendant Degner took no further action regarding the headaches or the vomiting.

67.

Sometime after the May 22, 2007 visit with Defendant Degner, Plaintiff informed the SMU treatment team that he would commit suicide because the headaches were too great to handle. The psychiatrist, Dr. Ruthven, ordered a CAT scan.

68.

On or about May 29, 2007, Plaintiff had a CAT scan, which showed that Plaintiff suffered from a massive subdural hematoma. Plaintiff was taken to the emergency room at Salem Hospital where he underwent emergency brain surgery.

69.

Following the brain surgery, Plaintiff spent four days in the Intensive Care Unit of Salem Hospital, two more days on the Salem Hospital ward and two days in the OSP infirmary.

70.

Following the brain surgery, a follow-up CAT scan revealed fluid on Plaintiff's brain.

71.

Plaintiff's brain surgeon, Dr. Maurice Collada, informed Plaintiff that the subdural hematoma had been caused by trauma to the head. Dr. Collada informed Plaintiff that that the blood clots were very old and that Plaintiff's brain had built up layers of insulating material over time around the blood clots, build-up that took up space in the brain cavity causing pressure on Plaintiff's brain, the headaches and the vomiting.

72.

The brain surgery, blood clots, vomiting and headaches were a direct and proximate result of Plaintiff's assault at OSCI on or about July 5, 2006.

73.

Defendant Degner knew that there was a substantial and excessive risk that Plaintiff's various health and mental problems between July 2006 and June 2007 were symptoms of a severe head injury caused by his assault in July 2006.

74.

By failing to order proper diagnostic tests warranted by Plaintiff's symptoms and medical history for over nine months, Defendant Degner was deliberately indifferent to Plaintiff's substantial medical needs.

75.

As a direct and proximate result of Defendant Degner's deliberate indifference to Plaintiff's substantial medical needs, Plaintiff suffered from over nine months of chronic severe headaches, and continues to suffer from dizziness, blurred vision, post-traumatic stress disorder, emotional disturbance, ongoing cognitive impairment and a disfiguring horseshoe shaped scar on his head.

## RELIEF REQUESTED

Plaintiff Vincent Padgett respectfully requests the following relief:

1. On Plaintiff's first claim for relief, compensatory damages for pain and suffering and permanent cognitive and emotional impairment against Defendants Kowanda, Schaefer, Willis, Hubbard, Kolman, Howton, Browser, Borello, Ogden, Tupou, and Wilkerson in an amount to be established at trial, but not less than $500,000, and punitive damages in an amount to be established at trial, but not less than the amount of compensatory damages awarded;

2. On Plaintiff's second claim for relief, compensatory damages for pain and suffering and permanent cognitive and emotional impairment against Defendant Degner in an amount to be established at trial, but not less than $500,000, and punitive damages in an amount to be established at trial, but not less than the amount of compensatory damages awarded;

3. Award of all costs incurred, including attorney and expert witness fees pursuant to 41 U.S.C. § 1988(b) and (c); and

4. Such further relief as the Court might deem necessary and prudent.

DATED: January 27, 2011.

        Respectfully submitted,

        GARVEY SCHUBERT BARER

        By */s/ John C. Rothermich*
          John C. Rothermich, OSB #071685
          jrothermich@gsblaw.com
          Tel: (503) 228-3939; Fax: (503) 226-0259
          Jeffrey Young, WSBA #38999
          jyoung@gsblaw.com
          Tel: (206) 464-3939; Fax: (206) 464-0125
          Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on the 27th day of January, 2011, the foregoing was filed electronically. Notice of this filing will be sent to all other counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ John C. Rothermich
John C. Rothermich

Of Attorneys for Plaintiff

PDX_DOCS:458885.2

CERTIFICATE OF SERVICE
Page 1.